THE RANDOLPH IRON COMPANY v. ALEXANDER ELLIOTT.

1. A contract for the future delivery of ore vests no title to the ore in the vendee, unless it is set apart.

2. If A purchases ore of B, and C, without the knowledge or consent of A, delivers his ore in fulfillment of the contract of B, the relation of vendor and purchaser does not exist between A and C.

3. In such case, after demand and refusal, or actual conversion, trover will lie, or after sale of the ore by A, the tort may be waived and *assumpsit* maintained by C.

In case.    On rule to show cause.

Argued November Term, 1869, before the CHIEF JUSTICE, and DEPUE, VAN SYCKEL, and WOODHULL, Justices.

For plaintiffs, *H. C. Pitney.*

For defendant, *Neighbour* and *Vanatta.*

VAN SYCKEL, J.  This is an action of *assumpsit* to recover the price of eight boat-loads of iron ore, which the plaintiffs allege they sold and delivered to the defendant.

The defendant admits that he received the ore, but sets up in defence that he purchased it in March, or early in April, 1867, of the then joint owners of the mine from which it was raised, through Joseph C. Chandler, one of their number, and not of the plaintiffs under the alleged contract of April 30th or May 1st, 1867, and that he is therefore not bound to account to the plaintiffs for it.

The Randolph Iron Company was organized on the 30th of April, 1867 ; the first boat-load of ore was shipped on the 15th of May, 1867, and the last on the 11th of the following June, the principal part of it having been mined in May.

If, as the defendant insists, the title to this ore passed to him in the latter part of March, this action will not lie.

The defendant's title rests upon the alleged sale by Chandler, as one of the joint owners of the mine. That was a contract for the future delivery of one thousand tons of ore, but the ore agreed to be sold was not set apart, and therefore no title to it could pass under that agreement. All that the defendant could acquire by his stipulation with Chandler was a right of action against the associates for breach of the engagement to deliver the ore; he could not maintain trover or replevin against any subsequent purchaser of the ore from the associates.

The subsequent sale and delivery by the joint owners to the corporation of all their ore and mines, perfected a title in the plaintiffs which could not be divested without their consent.

Herrick, the president of the company, testifies very distinctly, that on the 30th of April, 1867, after the organization was consummated, the directors told Chandler to say to Elliott that he could have one thousand tons of ore at $5 per ton, cash on delivery, and that Chandler had no other or greater authority in the premises than to carry this message to the defendant. If Chandler induced the defendant to believe that this was the ore of the joint owners which he was delivering in fulfillment of his March agreement, although he thereby acquired no title to the ore, an action will not lie against him as purchaser.

An action of *indebitatus assumpsit* can never be maintained, unless upon a contract expressly made, or implied in law. If the contract was as defendant states it, there was no express contract with the plaintiffs, nor could one be implied in law.

If one accepts or knowingly avails himself of the benefit of services done for him without his authority or request, he shall be held to pay a reasonable compensation for them; or if a person takes up wares from a tradesman without any agreement as to price, the law implies a promise to pay their real value. But if in this case the defendant purchased ore of Chandler, and the company, without his knowledge or

Randolph Iron Co. v. Elliott.

consent, delivered him their own ore, the relation of vendor and purchaser does not exist between them. After demand of the ore and refusal to return it, or after actual conversion, trover would lie; or, after sale of the ore by defendant, the tort might be waived and *assumpsit* maintained.

There was no demand for the return of the ore, nor actual conversion and sale proved, and therefore it must appear from the case that the defendant knew, when he received the ore, that it belonged to the plaintiffs.

Herrick testifies that in July the defendant made a demand upon the company to complete the delivery of one thousand tons, thereby recognizing the plaintiffs as the party contracted with; and Elliott himself admits that after Tretheway presented him a bill from the company for part of the ore, he received two boat-loads.

The receipt of Chandler offered in evidence by the defendant is pertinent, and in these words:

"May 6th, 1867, received from Alex. Elliott, two thousand dollars on account of one thousand tons of ore to be delivered by Randolph Iron Co.

"JOS. C. CHANDLER."

From this evidence the jury were justified in finding that the contract was made between the plaintiffs and the defendant.

It was not within the authority given to Chandler to receive payment for the ore, and therefore the defendant's obligation to the plaintiffs is not discharged by payment to Chandler.

The rule to show cause must be discharged.

The CHIEF JUSTICE, and DEPUE and WOODHULL, Justices, concurred.